**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| **REENA REYNOLDS and**<br>**SHALINI SHARMA,**<br><br>                              **Plaintiffs,**<br><br>**v.**<br><br>**SKYLINE REAL ESTATE INVESTMENTS,**<br>**PAUL ABETON, FRANCES ABETON, and**<br>**EDWARD DECLAN BYRNE,**<br><br>                              **Defendants.** | **No. 1:22-cv-01241**<br><br>**Hon. Sara L. Ellis** |

**DEFENDANTS PAUL ABETON, FRANCES ABETON, AND**
**EDWARD DECLAN BYRNE'S MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION TO DISMISS UNDER RULE 12(B)(2) AND 12(B)(6)**

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ................................................................................................................ 1

FACTUAL ALLEGATIONS ............................................................................................... 2

LEGAL STANDARD........................................................................................................... 4

ARGUMENT ....................................................................................................................... 5

I.      Claims against Byrne and Mr. Abeton should be dismissed. ............................................ 5

II.     The Complaint should be dismissed under Rule 12(b)(6). ............................................. 6

        A.     Plaintiffs fail to state a Section 10(b) claim. ....................................................... 6

              1.     Plaintiffs' alleged joint venture or partnership is not a security. .............. 6

              2.     Plaintiffs plead no material misrepresentation or omission...................... 7

              3.     Plaintiffs fail to plead a strong inference of scienter. .............................. 8

              4.     Plaintiffs do not allege reliance in connection with the purchase of a security. .............................................................................................. 9

              5.     Plaintiffs fail to plead loss causation. ..................................................... 10

        B.     Plaintiffs fail to state a claim for any of their common law claims. .................. 11

              1.     With respect to Counts II through IV, Plaintiffs have not alleged any false statements, that they relied on any false statements, or that they suffered economic damages. ................................................... 11

              2.     The Complaint also does not state a claim for conversion. .................... 13

       CONCLUSION.................................................................................................... 15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Avila v. Citimortgage, Inc.*,
   2013 WL 5477574 (N.D. Ill. Oct. 2, 2013)...............................................................15

*Avon Hardware Co. v. Ace Hardware Corp.*,
   998 N.E.2d 1281 (Ill. App. 2013) ..........................................................................11

*Azran v. Fid. Nat'l Fin., Inc.*,
   2016 WL 4124286 (N.D. Ill. Aug. 3, 2016) ...........................................................12

*Bell v. City of Chi.*,
   835 F.3d 736 (7th Cir. 2016) ....................................................................................4

*Bonte v. U.S. Bank, N.A.*,
   624 F.3d 461 (7th Cir. 2010) ....................................................................................4

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
   230 F.3d 934 (7th Cir. 2000) ....................................................................................5

*Claus v. Mize*,
   317 F.3d 725 (7th Cir. 2003) ....................................................................................5

*Collins v. Kibort*,
   143 F.3d 331 (7th Cir. 1998) ....................................................................................5

*Cortes v. Gratkowski*,
   1991 WL 632 (N.D. Ill. Jan. 3, 1991) ......................................................................7

*DH2, Inc. v. Athanassiades*,
   359 F. Supp. 2d 708 (N.D. Ill. 2005) .......................................................................6

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005)................................................................................................10

*First Midwest Bank, N.A. v. Stewart Title Guar. Co.*,
   843 N.E.2d 327 (Ill. 2006) ......................................................................................11

*Fujifilm N. Am. Corp. v. D/C Exp. & Domestic Packing, Inc.*,
   339 F. Supp. 3d 790 (N.D. Ill. 2018) .....................................................................14

*Gurwara v. Lyphomed, Inc.*,
   739 F. Supp. 1162 (N.D. Ill. 1990) ...........................................................................9

*H&S Bldg. Inv., LLC v. Irani*,
    2017 WL 6762434 (Ill. App. Dec. 29, 2017) ........................................................12

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) ................................................................................................10

*Heavy & Gen. Laborers' Loc. 472 v. Fifth Third Bancorp*,
    2022 WL 1642221 (N.D. Ill. May 24, 2022) .....................................................8, 9

*Horbach v. Kaczmarek*,
    288 F.3d 969 (7th Cir. 2002) ............................................................................13, 14

*Howe v. Shcekin*,
    238 F. Supp. 3d 1046 (N.D. Ill. 2017) ...................................................................11

*Joe Hand Promotions, Inc. v. Lynch*,
    822 F. Supp. 2d 803 (N.D. Ill. 2011) ...............................................................13, 14

*Kubiak v. City of Chi.*,
    810 F.3d 476 (7th Cir. 2016) ....................................................................................4

*Landreth Timber Co. v. Landreth*,
    471 U.S. 681 (1985) ..................................................................................................6

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................10

*Martel Enters. v. City of Chicago*,
    584 N.E.2d 157 (Ill. App. 1991) .............................................................................15

*Massuda v. Panda Exp., Inc.*,
    759 F.3d 779 (7th Cir. 2014) ..................................................................................12

*Ong ex rel. Ong v. Sears, Roebuck & Co.*,
    459 F. Supp. 2d 729 (N.D. Ill. 2006) .....................................................................10

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*,
    895 F.3d 933 (7th Cir. 2018) ....................................................................................9

*Powers v. Corn Products Intern., Inc.*,
    557 F. Supp. 2d 921 (N.D. Ill. 2008) .....................................................................11

*United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*,
    836 F.3d 770 (7th Cir. 2016) ....................................................................................4

*Pugh v. Tribune Co.*,
    521 F.3d 686 (7th Cir. 2008) ....................................................................................8

*SEC v. Battoo*,
    158 F. Supp. 3d 676 (N.D. Ill. 2016) ............................................................6

*SEC v. Edwards*,
    540 U.S. 389 (2004) ......................................................................................6

*SEC v. W.J. Howey Co., et al.*,
    328 U.S. 293 (1946) ...................................................................................6, 7

*In re Sunpower Corp. Sec. Litig.*,
    2018 WL 1863055 (N.D. Cal. Apr. 18, 2018) .............................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .............................................................................4, 7, 8

*In re Verisign, Inc., Derivative Litigation*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ......................................................10

*Warth v. Seldin*,
    422 U.S. 490 (1975)....................................................................................10

**Statutes**

15 U.S.C. § 78u-4(b) ...............................................................................................4, 7

**Rules**

Fed. R. Civ. P. 9(b) .....................................................................................................4

Fed. R. Civ. P. 12(b) ...................................................................................................4

## INTRODUCTION

Plaintiffs Reena Reynolds and Shalini Sharma assert claims arising out of business ventures to develop real estate in Ireland, without any meaningful detail or guidance as to how the ventures were structured, who invested in which venture, what Plaintiffs' expected returns were, or what exactly went wrong, if anything. While Plaintiffs appear to allege some arrangement resembling a partnership, they fail to identify particular details concerning the terms of the partnership or how, if at all, any terms governing the partnership may have been breached. These random, unconnected allegations cannot survive a motion to dismiss, particularly considering the claims asserted.

In the first paragraph of their Complaint, Plaintiffs allege that the purpose of their lawsuit is "to recover funds that were illegally misappropriated by the brother and sister team of Frances Abeton, Edward Declan Byrne and Paul Abeton [collectively, the "Individual Defendants"]" under some kind of business enterprise related to two real estate development projects. Compl. at 1. But Plaintiffs assert *no* cause of action for any alleged violation of any terms governing the enterprise. Instead, Plaintiffs assert fraud-based claims including securities fraud under the Securities Exchange Act of 1934, fraud in the inducement, intentional misrepresentation, negligent misrepresentation, and conversion-by-fraud.

Dismissal is appropriate because Plaintiffs have failed to state any viable claims. With respect to Count I, their federal securities fraud claim, Plaintiffs do not allege (1) that they invested in a security; (2) that Defendants made a material misstatement or omission; (3) scienter; (4) that any misstatement or omission was made in connection with the purchase or sale of a security; (5) reliance; or (6) that any alleged misstatements or omissions caused an economic loss. And because Plaintiffs' common law claims (Counts II-IV) for fraud in the inducement, intentional

1

misrepresentation, and negligent misrepresentation all allegedly arise from the same facts (and largely share the same elements with the Section 10(b) claim), they too fail. For example, the Complaint does not allege that Defendants made any false statements, that Plaintiffs relied on such statements to their detriment, or that they suffered damages as a result. Additionally, Plaintiffs have failed to allege the existence of any sum of money that Defendants improperly exercised control over, making dismissal of Plaintiffs' conversion claim (Count V) appropriate.

## FACTUAL ALLEGATIONS

Plaintiffs assert federal securities fraud and common law fraud claims based on their apparent dissatisfaction with two real estate projects and Defendants' alleged lack of responsiveness to inquiries about these projects. In June 2017, Plaintiff Reynolds partnered with Defendants Byrne and Ms. Abeton—both of whom were based in Ireland—to start Skyline Real Estate Investments ("Skyline"), which Plaintiffs describe as either an intended partnership to be formed under the laws of Ireland or an investment fund focused on developing residential real estate in Ireland. Compl. ¶¶ 3, 11-12. Plaintiffs allege that Reynolds, Abeton, and Byrne formed a partnership where each would hold a one-third share in Skyline. *Id.* ¶ 13. Plaintiffs do not allege that the parties reduced their alleged partnership agreement to writing, nor do they assert any claim for breach of any partnership agreement.

Skyline engaged in several development projects. For Project 1 (a development in Bollarney Woods), Reynolds, Ms. Abeton, and Byrne agreed to equal profit-sharing. *Id.* ¶ 14. For Project 2 (a development in Delgany), the Complaint alleges that Plaintiff Sharma would be entitled to 20 percent of the profit, with the remaining 80 percent equally divided among the three partners. *Id.* The Complaint alleges generally that Reynolds was responsible for raising U.S. funding, Ms. Abeton was responsible for commercial activity, and Byrne was responsible for on-

2

site management. *Id.* ¶ 16. Plaintiff Sharma was brought in to assist with Project 2 and raise money. *Id.* ¶¶ 76, 82.

Plaintiffs assert that both projects would be supported by private funding raised by Reynolds in the U.S. and debt financing raised by Ms. Abeton in Ireland. *Id.* ¶ 17. The three agreed to contribute $100,000 each of their own money to the joint venture. *Id.* ¶¶ 18, 20. There are no allegations that Plaintiff Sharma contributed any money to the joint venture. Reynolds purportedly raised additional funds for Project 1. *Id.* ¶¶ 42-44. The Complaint alleges that groundbreaking on Project 1 was supposedly delayed for several months, and that Ms. Abeton made excuses for the delay. *Id.* ¶¶ 56-57. Plaintiffs concede, however, that Project 1 was completed and that all investors in the project were paid. *Id.* ¶¶ 58-62. Plaintiffs assert that Ms. Abeton retained profits from Project 1 to fund Project 2 and an unknown third project. *Id.* ¶ 65. Plaintiffs allege that they have not seen bookkeeping records for Project 1 and that they have "reason to believe" the finances of the project were never properly documented. *Id.* ¶ 118.

For Project 2, Plaintiffs allege that they raised $1.63 million, which was above the initial target of $1.5 million but below the adjusted target of $1.8 million. *Id.* ¶¶ 81-82. They allege that Ms. Abeton claimed that because of the $170,000 shortfall, they could not build as many houses as they had initially contemplated, and that profits would be reduced as a result. *Id.* ¶ 83. Construction on Project 2 began in spring 2019. *Id.* ¶ 87. Plaintiffs allege that in October 2019, Ms. Abeton and Byrne, without prior warning, suspended Plaintiffs' Skyline email accounts. *Id.* ¶ 104. Since then, Plaintiffs allege that they have not been paid for their investment in Project 2. *Id.* ¶¶ 110-16.

## LEGAL STANDARD

In a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010) (internal quotations and citation omitted). And a plaintiff must "provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (internal quotations and citation omitted).

A heightened pleading standard applies when a complaint alleges fraud, requiring a party to "state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). A complaint setting forth fraud claims "must describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC,* 836 F.3d 770, 776 (7th Cir. 2016). On top of Rule 9(b)'s requirements, a plaintiff alleging securities fraud under Section 10(b) must also meet the heightened pleading standards in the PSLRA. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 313-14 (2007). Heightened pleading under the PSLRA requires that a plaintiff allege that the defendant "(A) made an untrue statement of a material fact; or (B) omitted to state a material fact"; the plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The plaintiff must also "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." 15 U.S.C. § 78u-4(b)(2).

4

## ARGUMENT

**I.     Claims against Byrne and Mr. Abeton should be dismissed.**

Plaintiffs have not established that Byrne or Mr. Abeton have contacts with Illinois such that they are subject to the Court's jurisdiction.  The Due Process Clause allows the exercise of personal jurisdiction only when the defendant has "minimum contacts" with the jurisdiction, meaning they have "purposefully availed [themselves] of the privilege of conducting activities in the forum, invoking the benefits and protections of its laws." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000).  "The plaintiff bears the burden of showing that personal jurisdiction over the defendant exists."  *Claus v. Mize*, 317 F.3d 725, 727 (7th Cir. 2003).

Plaintiffs do not allege that Byrne and Mr. Abeton have any connection to Illinois.  The Complaint does not assert that they have ever been to Illinois, done business in Illinois, or have any connection to the jurisdiction.  Moreover, the Complaint offers no basis for imputing the contacts of Ms. Abeton to Byrne or Mr. Abeton.  Because Plaintiffs have failed to show personal jurisdiction over Byrne and Mr. Abeton, they must be dismissed.

The Complaint is also devoid of allegations giving rise to a cause of action against Byrne or Mr. Abeton.  For example, they are not mentioned as having made any material misstatement or omission or having an intent to deceive Plaintiffs (or anyone else).  For that reason alone, claims against them must be dismissed.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

## II.    The Complaint should be dismissed under Rule 12(b)(6).

### A.    Plaintiffs fail to state a Section 10(b) claim.

To state a claim in Count I (Violation of Securities Exchange Act Section 10(b) and Rule 10b-5), Plaintiffs "must allege that Defendants (1) made a false statement or omission; (2) of a material fact; (3) with scienter; (4) in connection with the purchase or sale of securities; (5) upon which Plaintiff justifiably relied; and (6) the reliance proximately caused Plaintiff's damages." *DH2, Inc. v. Athanassiades*, 359 F. Supp. 2d 708, 718 (N.D. Ill. 2005).  Plaintiffs fail to state a Section 10(b) claim for five reasons: first, they have not alleged that they purchased a security; second, they have not alleged any actionable misstatements or omissions of material fact made in connection with the purchase or sale of a security; third, they have not alleged an intent to defraud; fourth, they have not pled reliance; and fifth, they do not allege loss causation.

### 1.    Plaintiffs' alleged joint venture or partnership is not a security.

First, Plaintiffs do not allege that their business dealings with Defendants amount to the purchase of a "security."  Defined by the Supreme Court long ago, the hallmarks of a security are: "(1) an investment of money; (2) in a common enterprise; (3) with an expectation of profits to be derived solely from the efforts of others."  *SEC v. Battoo*, 158 F. Supp. 3d 676, 685 (N.D. Ill. 2016) (quoting *SEC v. W.J. Howey Co., et al.*, 328 U.S. 293, 298-99 (1946) (concluding an investment contract is a security where the plaintiffs expected profits that were derived solely from the efforts of others)).[1]

---

[1] This definition of "security" under the Securities Exchange Act of 1934 is "essentially identical in meaning" to the definition of that same word under the Securities Act of 1933. *SEC v. Edwards*, 540 U.S. 389, 393 (2004); *see also Landreth Timber Co. v. Landreth*, 471 U.S. 681, 686 n.1 (1985) ("We have repeatedly ruled that the definitions of 'security' in . . . the 1934 Act and . . . the 1933 Act are virtually identical and will be treated as such in our decisions dealing with the scope of the term.").

But Plaintiffs' own allegations show that they did not purchase a security, because whatever investment they made was in their own business enterprise over which they had control and where any profits would be derived based on their own efforts into the enterprise. *See, e.g.*, Compl. ¶ 16 ("Each partner had an intended role—Ms. Reynolds was responsible for raising United States (U.S.) funding and investor relations[.]"); ¶ 17 ("It was contemplated that the projects would be funded by private funds *raised by Ms. Reynolds* in the U.S.") (emphasis added); ¶¶ 76-77 (explaining that Ms. Sharma was brought in to assist with Project 2 and that she "agreed to partner with Skyline *solely based on her trust in Ms. Reynolds*") (emphasis added); ¶ 94 ("Ms. Reynolds and Ms. Sharma raised $1.63m from U.S. investors."); *see also W.J. Howey*, 328 U.S. at 298-99 (stating that an "investment contract" means "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits *solely from the efforts of the promoter or third party*" (emphasis added)).

Whatever legal form the parties intended for the business enterprise, it is clearly not the kind that "leaves virtually no substantive power in the hands of [P]laintiffs." *Cortes v. Gratkowski*, 1991 WL 632, at *2 (N.D. Ill. Jan. 3, 1991). Because Plaintiffs' business venture did not constitute a purchase of a security, Plaintiffs fail the first prerequisite for securities fraud.

### 2. Plaintiffs plead no material misrepresentation or omission.

Plaintiffs also fail to plead any specific misrepresentation, let alone meet the PSLRA requirement of "'specify[ing] each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading.'" *Tellabs.*, 551 U.S. at 321 (quoting 15 U.S.C. § 78u-4(b)(1)). The gist of the Complaint is that Defendants sometimes did not respond to Plaintiffs' requests for financial information quickly enough for Plaintiffs, or at all. Compl. ¶¶ 23, 66-67, 69, 72, 85, 89, 91, 97, 99, 101, 107, 114. At most, Plaintiffs suggest that Ms. Abeton sometimes

7

"provided incorrect information" to them (*id.* ¶ 91), but nowhere specify what this incorrect information was, when or where any statements were made, who made them, why the information was false or misleading, or how or why those communications were material and in connection with the purchase of a security. That vague assertion cannot even minimally demonstrate a material misstatement or omission, let alone do so under the heightened standards of Rule 9(b) and the PSLRA. *See Heavy & Gen. Laborers' Loc. 472 v. Fifth Third Bancorp*, 2022 WL 1642221, at *14 (N.D. Ill. May 24, 2022) (Ellis, J.) (explaining that the PSLRA requires "any complaint alleging a material misstatement or omission *to specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading*.") (emphasis added) (internal quotations and citation omitted).

### 3.      Plaintiffs fail to plead a strong inference of scienter.

Plaintiffs also fail to offer any facts showing scienter, let alone particularized facts creating a "strong inference" of scienter. *Tellabs*, 551 U.S. at 313. The Complaint alleges only that "Defendants knew that [unspecified] statements were false and misleading at the time of making them." Compl. ¶ 121. This strictly conclusory allegation has no supporting facts that could possibly meet the high bar required to demonstrate scienter. *See Pugh v. Tribune Co.*, 521 F.3d 686, 694 (7th Cir. 2008) (affirming dismissal of complaint and explaining that the plaintiffs' allegations regarding the defendant's knowledge were "wholly conclusory" and insufficient to draw an inference of scienter); *Heavy & Gen. Laborers' Loc. 482*, 2022 WL 1642221 at *20, 24 (dismissing complaint in part for failing to plead intent to deceive and noting that "[t]o meet this strong inference standard, an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.") (internal quotation and citation omitted); *In re Sunpower Corp. Sec. Litig.*,

2018 WL 1863055, at *3 (N.D. Cal. Apr. 18, 2018) (explaining that scienter allegations offering only "generalized support for the notion that" a defendant intended to mislead investors "fall[] woefully short of giving rise to a 'strong inference' of scienter"). Not only have Plaintiffs failed to plead scienter, but they have also failed to identify how *each defendant* intended to deceive investors, as they must. *See Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 936 (7th Cir. 2018); *compare with* Compl. ¶ 121 ("*Defendants* knew that [unspecified] statements were false and misleading at the time of making them") (emphasis added).

### 4. Plaintiffs do not allege reliance in connection with the purchase of a security.

Next, Plaintiffs fail to allege reliance on any misrepresentation or omission that Defendants made in connection with the purchase or sale of a security. With respect to Plaintiff Reynolds, the Complaint alleges that she gave money to a third party to provide to Skyline, and that each of the alleged partners agreed to contribute money to the projects (although the Complaint does not specify which project or how the funds were to be used). Compl. ¶¶ 18, 20. In fact, the Complaint asserts that Reynolds made this investment because of "the [alleged] agreement of the Partners"— *not* because of any statement made by Defendants. *Id.* ¶ 18. As a result, she has failed to plead an essential element of her Section 10(b) claim. *Gurwara v. Lyphomed, Inc.*, 739 F. Supp. 1162, 1166 (N.D. Ill. 1990); *see also Heavy & Gen. Laborers' Loc. 482*, 2022 WL 1642221, at *19 (explaining that the absence of a "concrete representation[] that might make [a communication] the kind of substantive statement upon which an investor would rely" forecloses reliance).

Plaintiff Sharma fares no better: nowhere does the Complaint state that she actually purchased a security in any entity, much less that she *relied* on any misrepresentation or omission about that security. In the absence of any allegation demonstrating actual reliance from either of the Plaintiffs, Plaintiffs cannot meet the exacting standard that the reliance be "in connection with"

the purchase of a security. *See, e.g.*, *In re Verisign, Inc., Derivative Litigation*, 531 F. Supp. 2d 1173, 1209 (N.D. Cal. 2007) (explaining that a securities fraud claim failed the reliance element where it "d[id] not identify a single [company] officer or director who relied on the supposedly false or misleading statements in deciding to undertake [a] stock repurchase on [the company's] behalf.").[2]

### 5. Plaintiffs fail to plead loss causation.

Nor do Plaintiffs plead "that the defendant's misrepresentation or other fraudulent conduct proximately caused the plaintiff's economic loss." *Ong ex rel. Ong v. Sears, Roebuck & Co.*, 459 F. Supp. 2d 729, 746 (N.D. Ill. 2006) (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005)). The plaintiff must "provide a defendant with some indication . . . of the causal connection that the plaintiff has in mind." *Dura Pharm.*, 544 U.S. at 347. "A plaintiff cannot rely on a mere allegation that it suffered damages from purchasing securities at a price artificially inflated due to a defendant's misrepresentations." *Ong ex rel. Ong*, 459 F. Supp. 2d at 747 (citing *Dura Pharm.*, 544 U.S. at 347).

Plaintiffs simply allege that "Defendants' false and misleading statements have caused Ms. Reynolds, Ms. Sharma, and the U.S. Investors[3] economic loss." Compl. ¶ 123. This is plainly insufficient. Indeed, the Supreme Court in *Dura* affirmed dismissal of a securities fraud complaint on loss causation grounds where "the complaint nowhere . . . provides the defendants with notice

---

[2] Plaintiffs also do not allege any facts that would support application of the fraud-on-the-market theory of reliance. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014).

[3] The "U.S. Investors" are not named plaintiffs, nor do Plaintiffs make any allegations as to class representation, or their adequacy to serve as the same. And Plaintiffs do not have standing to bring claims for the "U.S. Investors." A party may only bring a federal lawsuit where they allege an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). A party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

of . . . what the causal connection might be between [the alleged economic] loss and the misrepresentation" at issue. *Dura Pharm.*, 544 U.S. at 347. The same is true here: Plaintiffs do not allege what the causal connection is between any purported misrepresentation or omission by Defendants and Plaintiffs' claimed economic loss. Thus, the Court should dismiss Count I for lack of loss causation in addition to its many other defects above.

**B.      Plaintiffs fail to state a claim for any of their common law claims.**

      **1.      With respect to Counts II through IV, Plaintiffs have not alleged any false statements, that they relied on any false statements, or that they suffered economic damages.**

Plaintiffs' common law fraud-based claims fail for many of the same reasons as their securities fraud claim. Under Illinois law, claims for fraud in the inducement, intentional misrepresentation, and negligent misrepresentation all require that a plaintiff demonstrate an injury that resulted from relying on a defendant's false statement of fact. *See First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 334-35 (Ill. 2006) (explaining that negligent misrepresentation requires a false statement, reliance, and damages); *Powers v. Corn Products Intern., Inc.*, 557 F. Supp. 2d 921, 926 (N.D. Ill. 2008) (same for intentional misrepresentation); *Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281, 1287-88 (Ill. App. 2013) (same for fraud in inducement). Plaintiffs' Complaint fails to allege these key elements, and, for that reason, Counts II through IV fail even under ordinary pleading standards.

As discussed in Section II *supra*, Plaintiffs fail to plead that Defendants made a false statement or omission of material fact. At most, Plaintiffs allege that Defendants have on multiple occasions "refused to provide" Plaintiffs with allegedly pertinent information (*see, e.g.*, Compl. ¶¶ 47, 63, 85, 98, 102, 113) or that Plaintiffs have been denied access to other unspecified records or data (*see, e.g.*, Compl. ¶¶ 100, 104). But these are not false statements. *See, e.g., Howe v. Shcekin*,

11

238 F. Supp. 3d 1046, 1052 (N.D. Ill. 2017) (concluding in a similar context that a plaintiff did not sufficiently plead a false statement by alleging that "[the defendant] never presented or delivered to [the plaintiff] a prospectus for his investment . . ."). And nowhere in the Complaint do Plaintiffs allege that Defendants actually made a false or misleading statement. Therefore, Plaintiffs have failed to plead that any Defendant made a false statement for these three causes of action.

Plaintiffs' common law claims also fail because they do not sufficiently allege reliance on a material false statement or omission. "[A] court can determine reasonable reliance as a matter of law when no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn." *H&S Bldg. Inv., LLC v. Irani*, 2017 WL 6762434, at *3 (Ill. App. Dec. 29, 2017) (citation omitted). Here, Plaintiffs have not identified any particular actions they took (or failed to take) in reliance on any alleged false statements, improperly leaving this Court to speculate as to what their reliance may have been. Under these circumstances, dismissal is appropriate. *Massuda v. Panda Exp., Inc.*, 759 F.3d 779, 784 (7th Cir. 2014) ("Massuda never alleged that the Panda defendants intended to induce her to act based on its statement, nor that she did rely to her detriment. This claim was properly dismissed with prejudice."); *Azran v. Fid. Nat'l Fin., Inc.*, 2016 WL 4124286, at *3 (N.D. Ill. Aug. 3, 2016) (explaining that "plaintiff fails to allege that he relied on any misrepresentation and suffered damage as a result, which are required elements of a common-law fraud claim under Illinois law," and dismissing common law fraud claim).

Last, Plaintiffs do not allege economic damages stemming from alleged false statements. Plaintiffs merely assert, without factual support, that their individual reputations have been damaged. *See, e.g.*, Compl. ¶ 95 ("The damage to both Ms. Reynolds' and Ms. Sharma's

12

reputations and personal relationships is severe and caused a great deal of embarrassment to both

of them."); Compl. ¶ 106 (explaining that Ms. Sharma "was trying to avoid reputational damage").

These vague descriptions fail to adequately plead that Plaintiffs' reliance on any false statements

caused their losses. *See Azran*, 2016 WL 4124286, at *3.

For these reasons, Plaintiffs have failed to allege a claim for fraud in the inducement,

intentional misrepresentation, or negligent misrepresentation.

### 2. The Complaint also does not state a claim for conversion.

Plaintiffs' conversion claim in Count V relies on the same defective fraud allegations while

missing the crux of conversion under Illinois law.  Plaintiffs assert "[a]s a result of the actions

taken in reliance on Defendants' false statements and other actions in furtherance of their

fraudulent scheme, Defendants wrongly converted Plaintiffs['] funds for their own use."  Compl.

¶ 52.  But to prevail on a conversion claim under Illinois law, "a plaintiff must establish that (1)

he has a right to the property; (2) he has an absolute and unconditional right to the immediate

possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully

and without authorization assumed control, dominion, or ownership over the property." *Joe Hand*

*Promotions, Inc. v. Lynch,* 822 F. Supp. 2d 803, 806 (N.D. Ill. 2011) (quotation and citation

omitted).  Where a plaintiff alleges conversion of money, "[i]t must be shown that the money

claimed, or its equivalent, *at all times* belonged to the plaintiff and that the defendant converted it

to his own use." *Horbach v. Kaczmarek,* 288 F.3d 969, 978 (7th Cir. 2002) (quotation and citation

omitted) (emphasis in original).

Plaintiffs' claim for conversion fails because they do not identify a sum of money that

would constitute convertible property.  Where a plaintiff is "not claiming entitlement to a specific

fund or account (let alone specific coins or bills)," they do not state a claim for conversion under

Illinois law. *Horbach*, 288 F.3d at 975. Plaintiffs' prayer for relief does not ask the Court to return any specific fund—or even any specific amount—to Plaintiffs. Although Plaintiffs allege that Ms. Reynolds contributed $100,000 to the projects (*see* Compl. ¶¶ 18, 20), once those funds were transferred, they no longer belonged to Plaintiffs. Thus, Defendants could not have actually asserted control or ownership over Plaintiffs' funds. *See Fujifilm N. Am. Corp. v. D/C Exp. & Domestic Packing, Inc.*, 339 F. Supp. 3d 790, 801 (N.D. Ill. 2018) ("Plaintiff's conversion claim fails as a matter of law because Defendant did not assume control, dominion, or ownership over" the plaintiff's property).

In *Horbach*, the Seventh Circuit dismissed a claim for conversion, where, as here, the plaintiff argued that money could be the basis of a conversion claim. In that case, a purchaser brought a claim for breach of contract and conversion against a manufacturer after the purchaser made payments to the manufacturer for the completion and storage of equipment. 288 F.3d at 978. The manufacturer did not complete the items, causing the purchaser to cancel the purchase order. *Id.* The court held that the purchaser's conversion claim failed because the purchaser could not show that his "right to possession of [the] money was absolute" and could not show that the "money at all times belonged unconditionally to him." *Id.* Specifically, the court explained that the purchase agreement *obligated* the purchaser to pay money to the manufacturer and that the manufacturer's receipt of the payments was proper and "could not be described as unauthorized or wrongful in the sense that a claim conversion requires." *Id.*; *see also Joe Hand Promotions*, 822 F. Supp. 2d at 806 (holding that the defendant must have "wrongfully and without authorization" assumed control or ownership over the property).

Much like the purchaser in *Horbach*, Plaintiffs' conversion claim is premised on amounts of money (in some cases specified, as in Project 1, and in other instances, undefined) they

14

supposedly paid to Defendants as part of the business enterprise. But Plaintiffs' payments were based on an agreement between the parties, and Plaintiffs gave up the right to possess the money they invested when they paid Defendants under that agreement (whatever the terms of it might be). Thus, like the purchase in *Horbach*, Plaintiffs cannot show that they had the unconditional right to possess the investment money at all times before the alleged conversion. As such, Plaintiffs' claim for conversion fails.

To the extent that Plaintiffs' conversion claim is premised on alleged entitlement to profits from the business enterprise, it fares no better: there are no allegations that the venture was profitable, much less that Plaintiffs were entitled to those profits or that Defendants took them. Without these essential allegations, Plaintiffs' conversion claim must be dismissed. *See, e.g.*, *Avila v. Citimortgage, Inc.*, 2013 WL 5477574, at *3 (N.D. Ill. Oct. 2, 2013) (dismissing conversion claim where plaintiff "d[id] not state the specific dollar amount that was allegedly converted . . . [and could not] allege that he had an absolute and unconditional right to the money"). Nor is the allegation that Ms. Abeton and Byrne were "negligent" in their treatment of Plaintiffs, Compl. ¶ 97, enough to state a claim, because "an act which is merely negligent is not sufficient to establish conversion." *Martel Enters. v. City of Chicago*, 584 N.E.2d 157, 159-60 (Ill. App. 1991). Thus, the Court should dismiss this claim.

## CONCLUSION

For these reasons, the Court should dismiss the Complaint with prejudice.

Dated: July 8, 2022                    Respectfully submitted,

*/s/ Vinu G. Joseph*

Edward Andrew Southerling (pro hac vice)
Patrick A. Wallace (pro hac vice)
**MCGUIREWOODS LLP**
888 16th Street NW, Suite 500
Black Lives Matter Plaza
Washington, DC 20006
Tel: 202.857.1772
Email: asoutherling@mcguirewoods.com

Vinu G. Joseph
**MCGUIREWOODS LLP**
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
Tel: 312.750.3511
Email: vjoseph@mcguirewoods.com

*Attorneys for Paul Abeton, Frances Abeton, and Edward Declan Byrne*

16

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that he caused the foregoing document to be filed via the Court's ECF/CM system, on July 8, 2022, which will automatically cause an electronic copy of the document to be transmitted to all counsel of record.

*/s/ Vinu G. Joseph*
Vinu G. Joseph