# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| REENA REYNOLDS and<br>SHALINI SHARMA, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| | ) | No. 22 C 1241 |
| v. | )<br>) | |
| | ) | Judge Sara L. Ellis |
| SKYLINE REAL ESTATE INVESTMENTS,<br>PAUL ABETON, FRANCES ABETON, and<br>EDWARD DECLAN BYRNE, | )<br>)<br>)<br>) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiffs Reena Reynolds and Shalini Sharma raised funds from investors in the United States for real estate projects in Ireland spearheaded by Defendant Skyline Real Estate Investments ("Skyline"), a partnership Ms. Reynolds intended to form under Irish law with Defendants Frances Abeton and Edward Declan Byrne. Having failed to receive information about the status of the projects or any promised profits, Plaintiffs filed this lawsuit against Skyline, Ms. Abeton, her husband Paul Abeton, and Mr. Byrne. Plaintiffs bring claims for securities fraud, fraud in the inducement, intentional and negligent misrepresentation, and conversion. Ms. Abeton, Mr. Abeton, and Mr. Byrne (collectively, the "Individual Defendants") have filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] The Court concludes that it cannot exercise jurisdiction over Mr. Abeton because he

---

[1] Although Plaintiffs maintain that they effectuated service of process on Skyline, counsel has not entered an appearance on its behalf. The Individual Defendants state that no legal entity named Skyline Real Estate Investments exists. To the extent the arguments raised by the Individual Defendants apply equally to Skyline, the Court extends its decision to include Skyline because Plaintiffs had an adequate opportunity to respond to the arguments. *See Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 2011) (court may *sua sponte* enter judgment in favor of additional non-moving defendants if motion by one defendant is equally effective in barring claim against other defendants and plaintiff had

does not have sufficient contacts with Illinois to subject him to this suit in this district. The Court also dismisses the complaint in its entirety. Plaintiffs have failed to satisfy the heightened pleading requirements for their securities fraud, fraud in the inducement, and intentional and negligent misrepresentation claims, and they have not set forth an entitlement to a specific sum of money so as to proceed on their conversion claim.

## BACKGROUND[2]

In June 2017, Ms. Reynolds, Ms. Abeton, and Mr. Byrne partnered to develop and sell properties in the Greater Dublin area, including Wicklow County. To do this, they created Skyline, a partnership in which each would have a 33.3% interest. Although they agreed to share decisionmaking responsibilities, they all had distinct roles: Ms. Reynolds took on responsibility for raising funds in the United States and investor relations; Ms. Abeton had responsibility for commercial activity; and Mr. Byrne was to oversee construction and on-site project management. The Skyline partners contemplated funding their projects with private funds that Ms. Reynolds raised, with a goal of €2.3 million, and debt financing arranged by Ms. Abeton in Ireland. The three partners also agreed to contribute $100,000 each to Skyline and not to take any salary, compensation, or benefits from Skyline during the course of its projects. Following through on this commitment, in September 2017, Ms. Reynolds transferred approximately $100,000 via John Lynch for Skyline. That money went into a bank account to which Ms. Reynolds had no

---

adequate opportunity to respond to the motion); *Roberts v. Cendent Mortg. Corp.*, No. 1:11- CV-01438-JMS, 2013 WL 2467996, at *5 (S.D. Ind. June 7, 2013) (although the defendants had not entered appearances and it was not clear if they had been served, court could impute arguments made by one defendant to all defendants and dismiss claims against all of them).

[2] The Court takes the facts in the background section from Plaintiffs' complaint and presumes them to be true for the purpose of resolving the Individual Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

access or control. Ms. Abeton and Mr. Byrne never confirmed to Ms. Reynolds that they made their partnership investments in Skyline.

In the summer of 2017, Ms. Abeton hired Baker Tilly Accountants and Tax Advisors ("Baker Tilly") and LK Shields Solicitors to advise on Skyline's corporate and investment structure. In December 2017, Baker Tilly produced a plan,[3] proposing the creation of an alternative investment fund, Skyline Treasury DAC, into which investor funds would be placed. Skyline Treasury DAC would then secure a loan from Castlehaven Financial ("Castlehaven"), which Ms. Abeton told Ms. Reynolds depended on the investor funds. Once Skyline Treasury DAC received the loan, it would loan funds to special purpose vehicles ("SPVs") to develop properties. Upon completion of a project, the SPV would repay the loan to Skyline Treasury DAC, which would then provide investors with a return of their principal plus a 25% return on assets.

In early 2018, Ms. Abeton told Ms. Reynolds that she was applying for Skyline to be an alternative investment fund, but Ms. Abeton never completed that process. Believing the process was complete, however, Ms. Reynolds represented to potential U.S. investors that Skyline was an alternative investment fund. Ms. Reynolds also expected Ms. Abeton to set up Skyline Real Estate, Inc. as a holding company. Ms. Abeton's failure to do so deprived Ms. Reynolds of a position as a director of that company. Ms. Abeton, Mr. Abeton, and Mr. Byrne instead set up various corporate entities, including Skyline Treasury DAC, for which Mr. and Ms. Abeton serve as directors.

In 2017 and early 2018, Ms. Reynolds began raising investor funds from U.S.-based private investors, including her friends and family, for Skyline's projects. Over this time period, including in the summer of 2018, Ms. Abeton traveled to Chicago several times to meet with

---

[3] Ms. Reynolds did not receive a copy of the Baker Tilly plan.

3

prospective Skyline investors. At these meetings, Ms. Abeton told investors that Ms. Reynolds was an equal partner in Skyline, a critical factor in the investors' decision to invest in Skyline. Ms. Reynolds raised €706,000 in U.S. investor funds during the summer of 2018, with €492,000 transferred to John Lynch's account for Skyline and the remainder to a bank account Ms. Abeton controlled. Ms. Reynolds and the U.S. investors transferred these funds to Ireland even though Ms. Reynolds, Ms. Abeton, and Mr. Byrne did not have a written agreement in place concerning their use. Ms. Abeton urged Ms. Reynolds to transfer the funds quickly so that Skyline would not miss out on making a bid on a parcel of land, assuring Ms. Reynolds that partnership paperwork was forthcoming.

Skyline initiated two projects: Project 1 (Bollarney Woods) and Project 2 (Wicklow Arms). Project 1 had six U.S.-based investors. The groundbreaking for Project 1 did not take place until August 2018, with Ms. Abeton providing various unfounded excuses for the delay. She also insisted that Project 1 would be completed in one year, even after Ms. Reynolds pressed her on the timeline. Ms. Reynolds continued trying to raise private funding and Irish financing. Because of delays, the investors in Project 1 became increasingly frustrated, communicating directly with Ms. Abeton to request financial information, which they never received. By May 2020, the City Council purportedly purchased all of the Project 1 houses for approximately €10 million. But Ms. Abeton represented to Ms. Reynolds that twelve houses remained to be closed at that time. Ultimately, Skyline delivered Project 1 and paid investors one and a half years after the promised target date and two and a half years after the investors advanced funds. Ms. Abeton has refused to provide the exact amounts received from the sales, although she has indicated that part of the proceeds went to Skyline and part to Castlehaven. Two investors requested financial information in the summer of 2020, which Ms. Abeton ignored for several

months and then only provided insufficient financial information. Ms. Abeton later used these requests for information as an excuse to disengage with Ms. Reynolds, claiming that any Skyline profits from Project 1 were being diluted by the need to incur legal fees to deal with the two investors' requests. Ms. Reynolds has not received her share of the profit on Project 1.

Project 2 involved a parcel of land in Delgany behind the Wicklow Arms Pub, with the intention to develop the entire site. To help raise funds for Project 2, Ms. Reynolds brought in Ms. Sharma as a partner. The Skyline partners agreed Ms. Sharma would receive twenty percent of the profit from Project 2, with the remainder divided equally among the three Skyline partners. Ms. Abeton met Ms. Sharma in Chicago in the fall of 2018 and stated that she would amend the Skyline paperwork to reflect Ms. Sharma's involvement. Ms. Reynolds, Ms. Sharma, Ms. Abeton, and Mr. Byrne agreed on a €1.5 million target investment, but Ms. Abeton later insisted on raising €1.8 million. Ultimately, Plaintiffs raised $1.63 million from twelve U.S. investors. But Ms. Abeton claimed that because of a €170,000 shortfall, Castlehaven would not provide enough funding, meaning they had to sell a majority of the land and the pub and could only build twelve instead of thirty-five houses, reducing the project's scope and anticipated profit significantly. Ms. Abeton has refused to share details of the loan amount and terms from Castlehaven or the proceeds of the sale of the Wicklow Arms Pub and land with Plaintiffs.

Construction on Project 2 began in spring 2019. In mid-April 2020, Ms. Abeton told Ms. Reynolds that approximately two weeks of work remained for Project 2, after which the houses would be placed on the market. Although Ms. Abeton has provided some updates, the Project 2 investors have not been paid, with investors having lost confidence in the outcome of the project. On October 29, 2021, Plaintiffs expected Ms. Abeton to send redemption letters to Project 2 investors that would promise payment in November. Plaintiffs received a draft of the letter

before that date, but the draft did not include redemption language and instead only asked for documentation from investors. Skyline reportedly is waiting for the Project 2 houses to close before making payments. Ms. Reynolds understands that all twelve houses are under contract, but four closings remain outstanding. An inspection of the property indicates that the four remaining houses have not been completed, with little progress made since October 2021. Ms. Abeton has not provided any information on the sale proceeds from the other eight houses and refuses to pay the investors. Plaintiffs also have not received any payment from the project.

Ms. Abeton has generally refused to provide financial reporting and data on Skyline and the projects despite Ms. Reynolds' and investors' repeated requests. Ms. Reynolds has never received access to the bank accounts to which the investor money was transferred, with Ms. Abeton instead keeping control of all investor funds. In October 2019, Ms. Abeton shut down Plaintiffs' Skyline email accounts without informing them and has refused to reinstate their accounts. In January 2021, Plaintiffs wrote to Ms. Abeton requesting financial information and asking for an explanation as to why Ms. Abeton removed the promise of a 25% return to investors. Although Ms. Abeton responded, she did not provide adequate answers to Plaintiffs' questions. And at a May 2021 meeting of Ms. Reynolds, Ms. Abeton, and Mr. Byrne, Ms. Abeton informed Ms. Reynolds that they would not provide her with any financial information and had no obligation to do so.

## ANALYSIS

### I. Personal Jurisdiction

First, Mr. Byrne and Mr. Abeton ask the Court to dismiss Plaintiffs' claims against them, arguing that they do not have sufficient contacts with Illinois to subject them to this Court's jurisdiction. A motion to dismiss under Rule 12(b)(2) challenges the Court's jurisdiction over a

party. Fed. R. Civ. P. 12(b)(2). When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted). Where, as here, the Court rules on the Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Id.* at 392–93; *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In resolving a Rule 12(b)(2) motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint," *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012), and "reads the complaint liberally with every inference drawn in favor of [the] plaintiff," *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

Jurisdiction is proper under the Due Process Clause of the United States Constitution if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017).

Personal jurisdiction comes in two forms: general and specific. *See Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019). Plaintiffs do not argue that the Court has general jurisdiction over Mr. Abeton or Mr. Byrne, and so the Court limits its analysis accordingly. "[S]pecific personal jurisdiction requires that (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the state; (2) the alleged

7

injury arises out of or relates to the defendant's forum-related activities; and (3) any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021); *see also Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) ("Specific jurisdiction is jurisdiction over a specific claim based on the defendant's contacts with the forum that gave rise to or are closely connected to the claim itself."). For purposes of specific jurisdiction, "[t]he relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800–01 (7th Cir. 2014).

Plaintiffs allege that the Individual Defendants specifically sought out a partnership with and investment from Ms. Reynolds, an Illinois resident, and other Illinois investors, with Ms. Abeton traveling to Illinois on several occasions to accompany Ms. Reynolds at investor meetings and to discuss the Skyline partnership documentation. These allegations sufficiently bring Ms. Abeton within the Court's jurisdiction, but the Court cannot automatically say the same for Mr. Abeton and Mr. Byrne, as it must consider each defendant's contacts with Illinois individually. *Calder v. Jones*, 465 U.S. 783, 790 (1984).

Initially, the complaint does not indicate that Mr. Abeton had any involvement in the Skyline partnership. Thus, contrary to Plaintiffs' argument, the Court cannot impute Skyline's or Ms. Abeton's contacts with Illinois to Mr. Abeton. *Cf. Wolfson v. S & S Sec.*, 756 F. Supp. 374, 377 (N.D. Ill. 1991) ("Since the court has jurisdiction over the partnership, jurisdiction also exists over the general partners."). Plaintiffs' remaining allegations concerning Mr. Abeton, namely that he is a director of Skyline Treasury DAC, has set up various corporate entities to support projects in Ireland with Ms. Abeton and Mr. Byrne, and has failed to respond to requests for information from Ms. Reynolds, do not tie him to Illinois. Although Plaintiffs allege that Ms.

8

Reynolds has requested information from Mr. Abeton, Ms. Reynolds' presence in Illinois cannot alone create personal jurisdiction over Mr. Abeton. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."). Similarly, the fact that Plaintiffs or other investors have experienced harm in Illinois does not provide the Court with jurisdiction over Mr. Abeton. *See Rogers*, 996 F.3d at 819 ("The question is not whether the plaintiff experienced a particular injury or effect in the forum state but whether the defendant's conduct connects him with the forum in a meaningful way."). Therefore, the Court dismisses Mr. Abeton from this case for lack of personal jurisdiction.

As for Mr. Byrne, however, his involvement in the Skyline partnership with Ms. Reynolds and Ms. Abeton requires a different analysis. Mr. Byrne contends that the complaint does not sufficiently allege that they actually formed a partnership. But the Individual Defendants did not present any evidence to attack the complaint's allegations for jurisdictional purposes. *Cf. Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019) ("Where, as here, the defendants submit evidence opposing the district court's exercise of personal jurisdiction, the plaintiffs must similarly submit affirmative evidence supporting the court's exercise of jurisdiction."). The Court thus takes as true the complaint's allegations that Ms. Reynolds, Ms. Abeton, and Mr. Byrne entered into a partnership, which they intended to formalize as Skyline, in which they had equal interests and shared decisionmaking responsibilities. *See* Doc. 1 ¶ 13. As such, the Court imputes the contacts Ms. Abeton purportedly had with Illinois on behalf of the Skyline partnership to Mr. Byrne. *See Jackson Nat'l Life Ins. Co. v. Greycliff Partners, Ltd.*, 2 F. Supp. 2d 1164, 1167 (E.D. Wis. 1998) ("If a partner commits a tort in one jurisdiction, he

subjects the partnership, and therefore the other partners, to liability, and presumably, to personal jurisdiction."); *see also West v. Vandenheuvel*, No. 94 C 50276, 1995 WL 360461, at *4 (N.D. Ill. June 16, 1995) ("The extension of jurisdiction through a partnership to nonparticipant, nonresident partners is predicated upon the unique liability and agency structure of a partnership, where general partners are both principals and agents of the partnership."); *Felicia, Ltd. v. Gulf Am. Barge, Ltd.*, 555 F. Supp. 801, 806 (N.D. Ill. 1983) ("General partners as well as partnership employees or agents are agents for all other general partners. Accordingly the Illinois contacts that bring Gulf American into court equally support the assertion of personal jurisdiction over each of its general partners."); *Heritage Christian Schs., Inc. v. ING N. Am. Ins. Corp.*, No. 11-C-1067, 2012 WL 1079440, at *3 n.1 (E.D. Wis. Mar. 30, 2012) ("[A] general partnership and its partners are one and the same—the partners are the partnership—and so the contacts of the partnership are necessarily the contacts of the partners.").

Subjecting Mr. Byrne to jurisdiction in Illinois also comports with fair play and substantial justice. In this analysis, the Court evaluates "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Felland*, 682 F.3d at 677 (citation omitted). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (citation omitted). Here, although Mr. Byrne lives overseas, he has not made a compelling case that litigating in Illinois would be unduly burdensome. And Illinois has "a strong interest in providing a forum for its residents, including [Plaintiffs], to seek

redress for harms suffered within the state by an out-of-state actor." *Curry*, 949 F.3d 385 at 402; *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 432 (7th Cir. 2010) (noting "Illinois's significant interest in providing a forum for its residents to seek relief when they suffer harm in Illinois from a wrong that occurred at least in part in Illinois"). Therefore, the Court finds that it may exercise personal jurisdiction over Mr. Byrne. *See Brown v. 1995 Tenet ParaAmerica Bicycle Challenge*, 931 F. Supp. 592, 594–95 (N.D. Ill. 1996) (exercise of personal jurisdiction over partners in a partnership where one partner knowingly solicited funds from Illinois residents comported with fair play and substantial justice).

## II.     Sufficiency of the Claims

Having resolved the jurisdictional objections, the Court turns to Ms. Abeton and Mr. Byrne's challenges to the sufficiency of Plaintiffs' claims. In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615

11

(7th Cir. 2011) (citation omitted). Rule 9(b) does not govern only claims of fraud; it applies to all allegations and averments of fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011); *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino*, 477 F.3d at 507.

### A. Securities Fraud Claim (Count One)

Ms. Abeton and Mr. Byrne argue that Plaintiffs have not satisfied the pleading requirements to assert their claim for securities fraud under § 10(b) of the Securities Exchange Act of 1934, codified at 15 U.S.C. §§ 78k(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. Section 10(b) and SEC Rule 10b-5 "prohibit fraudulent or misleading statements of material fact in connection with the purchase or sale of a security." *Walleye Trading LLC v. AbbVie Inc.*, 962 F.3d 975, 977 (7th Cir. 2020). To state a claim under § 10(b) and Rule 10b-5, a plaintiff must allege that "(1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement proximately caused the plaintiff's damages." *Fryman v. Atlas Fin. Holdings, Inc.*, 462 F. Supp. 3d 888, 896 (N.D. Ill. 2020) (citations omitted).

On top of the burden imposed by Rules 12(b)(6) and 9(b), Congress further heightened the pleading standards for securities fraud claims when it enacted the Private Securities Litigation Reform Act ("PSLRA") "[a]s a check against abusive litigation by private parties" in securities fraud suits. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* (*"Tellabs II"*), 551 U.S. 308, 313 (2007). The PSLRA requires "complaints alleging securities fraud [to] 'state with

12

particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598–99 (7th Cir. 2019) (quoting 15 U.S.C. § 78u-4(b)(2)(A)). The PSLRA also requires "[a]ny complaint alleging a material misstatement or omission [to] 'specify each statement alleged to have been misleading' and the 'reason or reasons why the statement is misleading.'" *Id.* at 599 (quoting 15 U.S.C. § 78u-4(b)(1)). On motion by a defendant, the Court must dismiss a complaint that does not meet these requirements. 15 U.S.C. § 78u-4(b)(3)(A).

Although Ms. Abeton and Mr. Byrne make a number of arguments for dismissal of the securities fraud claim, the Court need only address one: whether Plaintiffs have pleaded a specific misrepresentation or omission in compliance with Rule 9(b) and the PSLRA. Because the PSLRA requires plaintiffs to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C. § 78u–4(b)(1), they cannot merely claim that a statement was false or misleading. Instead, Plaintiffs must state with particularity the facts—known to the speaker at the time—that render the statement false or misleading. *Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*, No. 09-CV-5641, 2012 WL 1068761, at *4 (N.D. Ill. Mar. 29, 2012); *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 1000 (E.D. Wis. 2009) (dismissing complaint because it lacked "fact-based connections between a speaker, a statement, and specific, contradictory information presumably known to that speaker at the time the statement was made"). When alleging that a defendant omitted something, "'plaintiffs must point to a specific statement that is made misleading by [an] omission,' and offer 'specific, contradictory information' known to [the defendant] sufficient to establish that [the defendant] made any misleading statements." *Garden City*, 2012 WL 1068761, at *5 (first alteration in original) (citations omitted). Put another way, in evaluating

13

whether Plaintiffs have adequately pleaded falsity, the Court must determine "whether the facts alleged are sufficient to support a reasonable belief as to the misleading nature of the statement or omission." *Makor Issues & Rights, Ltd. v. Tellabs, Inc.* ("*Tellabs I*"), 437 F.3d 588, 596 (7th Cir.2006) (quoting *Novak v. Kasaks*, 216 F.3d 300, 314 n.1 (2d Cir. 2000)), *vacated and remanded on other grounds*, *Tellabs II*, 551 U.S. 308.

Here, Plaintiffs have not even identified any allegedly misleading statements. *See Kuebler v. Vectren Corp.*, 13 F.4th 631, 638 (7th Cir. 2021) ("Plaintiffs must identify each statement alleged to have been misleading, the reason why each statement was misleading, and all relevant facts supporting that conclusion." (citing 15 U.S.C. § 78u-4(b)(1)). And while they represent that their complaint "details Individual Defendants' promises to them, who made them, and when, where, and how they were made," they cite only to the complaint "generally" in support. *See* Doc. 21 at 11, 14. To the extent they do point out specific paragraphs, these paragraphs do not suggest material misstatements or omissions. *See* Doc. 21 at 10 (citing, *e.g.*, Doc. 1 ¶ 20 (stating that Ms. Reynolds transferred money to an account for Skyline); *id.* ¶ 28 (alleging that Mr. and Ms. Abeton were directors of Skyline Treasury DAC); *id.* ¶ 44 (alleging that investor funds were wired to a bank account that Ms. Abeton controlled)). Plaintiffs have thus failed to clarify which statements are at issue, even after having the chance to do so in their response. *See Rossbach v. VASCO Data Sec., Int'l Inc.*, No. 15-CV-06605, 2018 WL 4699796, at *6 (N.D. Ill. Sept. 30, 2018) ("There should not be any guesswork in identifying what statements are at issue in this case. Rule 9(b) and the PSLRA require more."). As such, Plaintiffs have failed to comply with the PSLRA's pleading requirements, requiring dismissal of their securities fraud claim.[4] *See id.* ("It is of the utmost importance for Plaintiff to properly

---

[4] Because the Court finds that Plaintiffs have failed to satisfy the PSLRA's pleading requirements as to the identification of material misstatements or omissions, the Court need not address Defendants'

pinpoint what Defendants said that Plaintiff believes to have been unlawful, and the PSLRA requires a specific explanation as to why each specific statement was false and misleading.").

> B. **Fraud in the Inducement, Intentional Misrepresentation, and Negligent Misrepresentation (Counts Two–Four)**

Next, Ms. Abeton and Mr. Byrne argue that Plaintiffs have failed to sufficiently plead their common law fraud and negligent misrepresentation claims. These three claims have somewhat similar elements, with each requiring a misrepresentation of material fact. To state a fraud claim, including one for fraudulent inducement, a plaintiff must allege that: (1) the defendant made a false statement or omission of material fact, (2) the defendant knew of or believed in its falsity, (3) the defendant intended to induce the plaintiff to act, (4) the plaintiff acted in reliance on the truth of the defendant's statement, and (5) damages resulted from the plaintiff's reliance. *Weidner v. Karlin*, 402 Ill. App. 3d 1084, 1087 (2010); *see also Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 15 ("Fraudulent inducement is a form of common-law fraud." (citation omitted)). To state a claim for negligent misrepresentation, Plaintiffs must allege: "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *Tricontinental Indus., Ltd. v. Pricewaterhouse Coopers, LLP*, 475 F.3d 824, 833–34 (7th Cir. 2007) (quoting *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 334–35 (2006)).

Plaintiffs' fraud claims must comply with Rule 9(b). *Pirelli*, 631 F.3d at 446–47. Negligent misrepresentation claims, however, typically need only meet Rule 8's pleading

---

remaining arguments that Plaintiffs have not adequately pleaded their purchase of a security, scienter, reliance, or loss causation.

requirements. *Tricontinental Indus., Ltd.*, 475 F.3d at 835. Although Plaintiffs purport to bring claims for both intentional and negligent misrepresentation, the allegations for each claim are identical and sound in fraud, stating that "Defendants *knew* that these statements were false and misleading at the time of making them." Doc. 1 ¶ 135 (emphasis added) (intentional misrepresentation); *id.* ¶ 142 (emphasis added) (negligent misrepresentation). Therefore, Plaintiffs' negligent misrepresentation claim must also meet Rule 9(b)'s heightened pleading standard. *See Media Bank, LLC v. SCOTTeVEST, Inc.*, No. 19-CV-2465, 2020 WL 6825691, at *8–9 (N.D. Ill. Nov. 20, 2020) (applying Rule 9(b) to negligent misrepresentation claim that sounded in fraud where the plaintiff "allege[d] intent to deceive, not carelessness"); *Rosenstern v. Allergan, Inc.*, 987 F. Supp. 2d 795, 806 (N.D. Ill. 2013) (Rule 9(b) applied to negligent misrepresentation claim where "Plaintiff does *not* allege that Allergan acted with 'carelessness or negligence in ascertaining the truth' of its statements regarding the safety of Botox, but rather that Allergan *knowingly* made false statements" (citation omitted)).

    As with their securities fraud claim, Plaintiffs have not sufficiently pleaded fraudulent conduct under Rule 9(b). Plaintiffs only parrot the legal elements, failing to identify the content of the alleged misrepresentations and the circumstances surrounding their making. Again, the specific paragraphs to which Plaintiffs point in their response to the motion to dismiss do not include actionable misrepresentations. *See* Doc. 21 at 14 (citing, *e.g.*, Doc. 1 ¶ 45 (alleging that Ms. Reynolds never had control or custody of the investor funds); *id.* ¶¶ 100–101 (alleging that Ms. Reynolds never obtained access to the bank accounts and that Ms. Abeton instead kept control of the funds and made all project decisions); *id.* ¶¶ 103–104 (alleging that Ms. Abeton has kept Plaintiffs from speaking with Skyline advisors and shut down their email accounts)). To the extent Plaintiffs claim Ms. Abeton and Mr. Byrne did not respond to Plaintiffs' requests

16

for information, their failure to do so does not involve any actionable statement or omission. *See Howe v. Shcekin*, 238 F. Supp. 3d 1046, 1052 (N.D. Ill. 2017) (allegation that the defendant "never presented or delivered to [the plaintiff] a prospectus for his investment" described an action and not "false statements of fact or omissions of material facts that render statements misleading"). Because Plaintiffs have not identified the "who, what, when, where, and how" of Ms. Abeton and Mr. Byrne's allegedly fraudulent conduct in their complaint, they have left Ms. Abeton, Mr. Byrne, and the Court guessing as to the conduct underlying the fraud-based claims. *See AnchorBank, FSB*, 649 F.3d at 615; *MPC Containment Sys., Ltd. v. Moreland*, No. 05 C 6973, 2006 WL 2331148, at *3 (N.D. Ill. Aug. 10, 2006) ("MPC's lack of specificity regarding when and how the alleged false advertising and misrepresentations took place does not provide defendants with notice of the alleged wrongs, nor does it enable them to formulate an adequate response."). The Court thus dismisses these claims without prejudice for failure to comply with Rule 9(b).

    **C.**    **Conversion (Count Five)**

Finally, Ms. Abeton and Mr. Byrne seek dismissal of Plaintiffs' conversion claim. Conversion "is the unauthorized assumption of the right to possession or ownership of personal property belonging to another." *Cordes & Co. v. Mitchell Cos.*, 605 F. Supp. 2d 1015, 1024 (N.D. Ill. 2009). To state a claim for conversion under Illinois law, Plaintiffs must allege (1) Plaintiffs had a right to the property at issue; (2) Plaintiffs had an "absolute and unconditional" right to the immediate possession of the property; (3) Plaintiffs made a demand for possession; and (4) Ms. Abeton and Mr. Byrne wrongfully and without authorization assumed control, dominion, or ownership over the property. *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 738 (7th Cir. 2016).

Ms. Abeton and Mr. Byrne argue that Plaintiffs have not identified a specific sum of money that Ms. Abeton and Mr. Byrne allegedly converted. "Money may be the subject of conversion, but it must be capable of being described as a specific chattel[.]" *In re Thebus*, 108 Ill. 2d 255, 260 (1985). Plaintiffs argue that they were entitled to a specific percentage of all profits received from the real estate projects. But "an action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money." *Id.*; *see also AmeriFactors Fin. Grp., LLC v. Univ. of Chicago*, No. 21 C 6803, 2022 WL 3081897, at *6 (N.D. Ill. Aug. 3, 2022) (dismissing conversion claim where the plaintiff only alleged that the defendant "has not paid a bill on time"); *Bill Marek's The Competitive Edge, Inc. v. Mickelson Grp., Inc.*, 346 Ill. App. 3d 996, 1004 (2004) ("A right to an indeterminate sum is insufficient to maintain a cause of action in conversion."). That is all that Plaintiffs allege here, and so the Court must dismiss their claim. *See Sharp v. Bank of Am., N.A.*, No. 19 C 5223, 2020 WL 1543544, at *7 (N.D. Ill. Mar. 31, 2020) ("Sharp's conversion claim fails because it can be summed up as a mere obligation to pay money."); *Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011, 1017 (N.D. Ill. 2009) (dismissing conversion claim where the plaintiff "merely claims a right to an indeterminate sum of royalties," concluding that it was "simply plaintiff's breach of contract claim improperly dressed as a conversion claim").

## CONCLUSION

For the foregoing reasons, the Court grants the Individual Defendants' motion to dismiss [16]. The Court dismisses Defendant Paul Abeton from the case for lack of personal jurisdiction and dismisses the complaint without prejudice for failure to state a claim.

Dated: November 15, 2022

_____
SARA L. ELLIS
United States District Judge