**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| REENA REYNOLDS and | ) | |
| SHALINI SHARMA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 22 C 1241 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| SKYLINE REAL ESTATE LIMITED, | ) | |
| SKYLINE TREASURY DESIGNATED | ) | |
| ACTIVITY COMPANY, UNICORN REAL | ) | |
| ESTATE LIMITED, UNICORN REAL | ) | |
| ESTATE ONE LIMITED, UNICORN REAL | ) | |
| ESTATE TWO LIMITED, | ) | |
| FRANCES ABETON, and | ) | |
| EDWARD DECLAN BYRNE | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiffs Reena Reynolds and Shalini Sharma allege that they invested in, and solicited investments from others for, several real estate projects in Ireland undertaken through a real estate venture incorporated under Irish law between Defendant Frances Abeton, Defendant Edward Declan Byrne, and Ms. Reynolds. Having failed to receive information about the status of projects or any promised repayment of the principal or return on investment, Plaintiffs filed this lawsuit. The Court previously dismissed Plaintiffs' complaint, concluding that they had not sufficiently pleaded their claims. Doc. 26. In their first amended complaint (the "FAC"), Plaintiffs seek to proceed against Ms. Abeton and Mr. Byrne (the "Individual Defendants"), as well as five companies the Individual Defendants created in furtherance of the venture: Skyline Real Estate Limited ("Skyline Limited"), Skyline Treasury Designated Activity Company ("Skyline DAC"), Unicorn Real Estate Limited, Unicorn Real Estate One Limited, and Unicorn

Real Estate Two Limited (collectively, the "Corporate Defendants").  Plaintiffs bring claims for securities fraud, fraud in the inducement, intentional misrepresentation, negligent misrepresentation, and conversion.

The Corporate Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2).  They also alternatively seek dismissal under Rule 12(b)(6), a motion in which the Individual Defendants join.  The Court finds that Plaintiffs have failed to allege sufficient facts to suggest that the Corporate Defendants are alter egos of the Individual Defendants and so subject to personal jurisdiction in this Court.  The Court also dismisses all of Plaintiffs' claims against the Individual Defendants under Rule 12(b)(6).  Plaintiffs have not sufficiently alleged loss causation for purposes of their federal securities claim.  Additionally, Plaintiffs have failed to satisfy the heightened pleading requirements for their claims of fraud in the inducement, intentional misrepresentation, and negligent misrepresentation.  Finally, Plaintiffs again fail to demonstrate their entitlement to the specific sum of money they allege the Individual Defendants wrongfully hold, foreclosing their ability to proceed with a conversion claim.

## BACKGROUND[1]

In June 2017, Ms. Reynolds, Ms. Abeton, and Mr. Byrne commenced a real estate venture to buy land and construct housing in Ireland.  As the Individual Defendants represented to Ms. Reynolds, funding the planned construction projects would necessitate procuring loans from Irish banks, which require that those seeking a loan already control a certain amount of

---

[1] The Court takes the facts in the background section from the FAC and presumes them to be true for the purpose of resolving Defendants' motion to dismiss.  *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).  The Court also considers the materials submitted as attachments to Plaintiffs' response to a motion to dismiss to the extent they  are consistent with the pleadings and "illustrate the facts that the party expects to be able to prove."  *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

assets before granting approval. The Individual Defendants did not already possess the needed capital and required additional funding from U.S. investors to meet the requirements of the Irish banks. The Individual Defendants told Ms. Reynolds that the three of them would have equal control over the corporate entity Skyline Limited, which in turn would control other investment entities and corporations. While none of the partners would receive any salaries, compensation, or benefits other than their ownership stakes in the venture, the Individual Defendants assured Ms. Reynolds that each partner would receive a 33% share of the profits resulting from the venture.

The Individual Defendants and Ms. Reynolds divided the responsibilities for the venture as follows: Ms. Reynolds, positioned in the United States, would locate U.S. investors from among her personal and professional contacts, raise funds, and liaise between the investors and Ms. Abeton; Ms. Abeton, positioned in Ireland, would take on the day-to-day management of the commercial activities and the committed funds; and Mr. Byrne, also in Ireland, would oversee construction and the on-site management of the individual real estate projects. The venture undertook at least three real estate and construction projects in Ireland: Bollarney Woods ("Project One"); Wicklow Arms ("Project Two"); and Gorey, Wexford ("Project Three").

## I.       Project One

Project One was a development consisting of thirty-three homes built along the outskirts of Wicklow Town, Ireland. In addition to contributing $100,000 of her own money to the project, Ms. Reynolds began identifying potential investors for Project One from among her friends and colleagues sometime in 2017. Ms. Abeton made several trips to Chicago that same year to meet with these investors. The Individual Defendants promised potential investors in Project One a minimum return of 25% on any investment made to the project and that the project

would be completed within a one-year timeframe. Between 2017 and 2018, Ms. Abeton also represented to these investors that Ms. Reynolds was a controlling partner in the Skyline venture with access to the financial data of the businesses, and that Skyline DAC would be registered as an Alternative Investment Fund ("AIF"), a type of investment vehicle registered with and regulated by the Central Bank of Ireland. The Individual Defendants did not give Ms. Reynolds access to the financial data of the venture and never registered Skyline DAC as an AIF.

Ultimately, the venture raised over $700,000 in investor funds for Project One. Defendants then used these funds to obtain a loan from Castlehaven Finance ("Castlehaven") sometime in 2017 or 2018. Construction began on Project One around August 2018, with ASB Construction Limited ("ASB"), a company established on July 13, 2018, serving as the contractor. Ms. Reynolds and Ms. Sharma believe Ms. Abeton, her husband Paul Abeton, and Mr. Byrne own ASB, despite the fact that Ms. Abeton and Mr. Byrne never mentioned their ownership of and control over ASB to Ms. Reynolds or other investors.

In May 2020, Ms. Reynolds learned that the County Council of Wicklow had supposedly purchased the thirty-three homes developed for Project One for approximately €11.7 million. Defendants did not inform Ms. Reynolds or the other investors of the sale of the completed homes, nor did they share when the sales occurred, nor the amount of money involved in their closing. When Ms. Reynolds confronted Defendants about this, they falsely claimed the homes were not completely sold. Nonetheless, Defendants did pay some investors back their principal investments and supposed profits. Ms. Reynolds was not among the investors paid back for their investment in Project One.

## II.     Project Two

Project Two involved a proposed two-acre development centered around the historic Wicklow Arms Pub in Delgany, Ireland.  The project's initial scope included a total of thirty-five housing units, including ten apartments within the Wicklow Arms Pub itself.  Defendants courted Ms. Sharma as an investor, telling Ms. Sharma that she would hold a 20% ownership stake in the venture's corporate entities.  Defendants also represented to Ms. Sharma that Ms. Reynolds was a controlling partner in the Skyline venture with access to the financial data of the businesses.  Ms. Sharma agreed to partner in the venture, and she also invested over $140,000 dollars in Project Two.  Ms. Abeton met with Ms. Sharma in Chicago during the summer of 2018 and told Ms. Sharma that corporate documents of Skyline Limited would be amended to include Ms. Sharma's ownership stake, with a new agreement being drafted immediately to reflect the partnership between Ms. Sharma, Ms. Reynolds, Ms. Abeton, and Mr. Byrne.  A new agreement was never drafted, nor did Ms. Abeton change the documentation of Skyline Limited's ownership structure.  Ms. Reynolds and Ms. Sharma have also never received documentation as to Skyline Limited's finances or business activities, despite numerous requests for this information.

Ms. Abeton and her husband, Mr. Abeton, also met with Ms. Reynolds' and Ms. Sharma's personal and professional acquaintances in Chicago to raise money for Project Two. Ms. Abeton promised investors in Project Two a 100% return on investment with an assurance that profits would be between 25% and 30%, and that investors would collectively own a 10% stake in all of Project Two's investment entities.  The venture collected a total of €1.63 million from the U.S. investors for Project Two, an amount between the initially agreed upon funding target of €1.5 million and the €1.8 million target Ms. Abeton had subsequently requested.

In the fall of 2018, Ms. Abeton claimed that the scope of Project Two was being reduced, supposedly due to the €170,000 difference between the €1.8 million fundraising target and the amount collected. Ms. Abeton claimed that because of the shortfall, Castlehaven would not provide sufficient financing for Project Two's intended scope and that the venture would have to sell the pub and half of the land available for development to other developers. However, it appears that the reason for the reduction in scope lay instead in the fact that only twenty-two of the proposed thirty-five housing units had received government approval, with ten being the apartments within the Wicklow Arms Pub. Of the twelve approved housing units, only eight appear to have been built; Ms. Reynolds and Ms. Sharma believe development of the final four units stopped as of October 2021.

Despite repeated requests for information about the sale of the homes in Project Two and documents to support the claims Ms. Abeton made to Ms. Reynolds, Ms. Sharma, and other U.S. investors, Ms. Reynolds, Ms. Sharma, and the other investors in Project Two have not received any details as to the Castlehaven loan or the situation necessitating the reduction of Project Two's scope. Those who invested in Project Two have not been repaid either their initial investment or any profit resulting from Project Two.

### III.  Project Three

Ms. Reynolds understands that Ms. Abeton and Mr. Byrne have received a third loan from Castlehaven, with this one for the development of thirty-one homes in Gorey, County Wexford, Ireland. She and Ms. Sharma believe that proceeds from Project One and Project Two have gone toward funding Project Three, rather than to the investors in those initial two projects.

## ANALYSIS

### I.     Personal Jurisdiction

The Corporate Defendants ask the Court to dismiss the claims against them, arguing that they do not have sufficient contacts with Illinois to subject them to the Court's jurisdiction.  A motion to dismiss under Rule 12(b)(2) challenges the Court's jurisdiction over a party.  Fed. R. Civ. P. 12(b)(2).  When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction."  *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted).  Where, as here, the Court rules on the Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction.  *Id.* at 392–93; *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014).  In resolving a Rule 12(b)(2) motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint," *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012), and "reads the complaint liberally with every inference drawn in favor of [the] plaintiff," *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

Jurisdiction comports with due process if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)).  Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017).

Personal jurisdiction can either be general or specific.[2]  *See Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019). Because Plaintiffs do not argue that the Court has general jurisdiction over the Corporate Defendants, the Court limits its analysis to specific jurisdiction.  Specific personal jurisdiction "requires that (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to the defendant's forum-related activities; and (3) any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021); *see also Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) ("Specific jurisdiction is jurisdiction over a specific claim based on the defendant's contacts with the forum that gave rise to or are closely connected to the claim itself.").  For purposes of specific jurisdiction, "[t]he relevant contacts are those that center on the relations among the defendant, the forum, and the litigation."  *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014).

Plaintiffs do not argue or allege any facts that the Corporate Defendants took any actions directed at Illinois.  Instead, because the Court has previously found that Ms. Abeton and Mr. Byrne have sufficient contacts with Illinois to properly place them within the Court's jurisdiction, *see* Doc. 26 at 8–11, Plaintiffs argue that the Court should impute those contacts to the Corporate Defendants because they acted as the Individual Defendants' alter egos.  Plaintiffs therefore ask the Court to pierce the corporate veil to bring the Corporate Defendants within the

---

[2] As the Supreme Court has recently emphasized, these jurisdictional categories apply where a corporation has not otherwise consented to suit in the forum state.  *Mallory v. Norfolk S. Ry. Co.*, --- U.S. ----, --- S. Ct. ----, 2023 WL 4187749, at *8 (June 27, 2023).  An additional avenue for jurisdiction exists where a defendant has consented to suit.  *Id.*  Here, because Plaintiffs do not argue that the Corporate Defendants consented to suit in Illinois, the Court does not address this question further.

Court's jurisdiction. *See In re Wolf*, 644 B.R. 725, 748–52 (discussing conventional and reverse veil piercing under Illinois law).[3]

"Piercing the corporate veil is not favored and in general, courts are reluctant to do so." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008). However, courts will do so under certain conditions, such as to prevent fraud or avoid unfairness to third parties. *Nat'l Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 265 (7th Cir. 1996). Illinois uses a two-prong test to determine whether the Court may pierce the corporate veil: "[f]irst, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual . . . no longer exist; and second, circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569–70 (7th Cir. 1985) (citation omitted).[4]

In considering the first prong of whether sufficient unity of interest exists between the corporation and the principal, courts weigh the following factors:

---

[3] In reply, Defendants argue that the Court should not consider Plaintiffs' alter ego theory because they raised it for the first time in their response to the motion to dismiss. While Plaintiffs did not specifically allege that the Corporate Defendants are alter egos of the Individual Defendants in the FAC, they have included allegations that could support such an inference. Thus, the Court finds it appropriate to consider the plausibility of that inference, based on the facts alleged in the FAC and any additional supporting allegations included in Plaintiffs' response, as opposed to disregarding the argument because Plaintiffs did not use the specific words "alter ego" in the FAC. *See Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701 (7th Cir. 2014) (a plaintiff need only plead facts, not legal theories, in a complaint).

[4] Illinois typically applies the law of the state of incorporation in deciding corporate veil piercing claims. *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012). Although the Corporate Defendants are incorporated in Ireland, neither party has made mention of applicable Irish law or alerted the Court to any conflict between the laws of Ireland and Illinois regarding corporate veil piercing. The Court therefore assumes that the parties agree to apply Illinois law to the current case. *See Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits.").

>(1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere facade for the operation of the dominant stockholders.

*Judson Atkinson Candies*, 529 F.3d at 379. No one factor is determinative, with the circumstances of each case driving the inquiry. *Wachovia Sec.*, 674 F.3d at 752; *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 463 (7th Cir. 1991). Here, using these factors as guidance, the Court cannot find that Plaintiffs have alleged sufficient facts to meet the unity of interest prong.

Initially, although Plaintiffs allege that the Individual Defendants are the owners of, and decisionmakers for, the Corporate Defendants, this alone does not suggest that the Corporate Defendants are the Individual Defendants' alter egos. *See First Place Bank v. Skyline Funding, Inc.*, No. 10 CV 2044, 2011 WL 3273071, at *9 (N.D. Ill. July 27, 2011) ("Plaintiff alleges that Klein was the president and principal shareholder of Skyline, directed its decisions, and negotiated the Agreement with plaintiff . . . . [T]hese allegations suggest nothing more than that Klein was an active president of a small company; they do not indicate that Skyline was Klein's alter ego."); *Plastic Film Corp. of Am., Inc. v. Unipac, Inc.*, 128 F. Supp. 2d 1143, 1147 (N.D. Ill. 2001) ("[T]he fact that a corporation has only one single shareholder is not proof that the corporation is the 'alter ego' of that shareholder."); *Melko v. Dionisio*, 219 Ill. App. 3d 1048, 1064 (1991) ("[T]he mere allegation that [the defendant] was a dominant or sole shareholder is insufficient to enable a court to disregard the separate corporate existence.").

Plaintiffs further claim that the Individual Defendants frequently disregarded corporate formalities, failed to keep proper corporate records, and commingled funds, providing a string of citations to the FAC. *See* Doc. 43 at 15 (citing Doc. 30 ¶¶ 3, 22, 28, 33, 74, 80, 86, 87). The cited paragraphs, however, have nothing to do with Ms. Abeton and Mr. Byrne's alleged disregard of corporate formalities, failure to keep proper corporate records, or commingling of funds. *See Judson Atkinson Candies*, 529 F.3d at 380 ("Judson Atkinson does not point to any evidence supporting its blanket assertions that LMC's funds were used to pay CIC's expenses. . . . Thus, the district court correctly concluded that Judson Atkinson failed to present sufficient proof that improper commingling occurred."); *Laborers Pension Fund v. Bakke Constr. Co.*, No. 87 C 963, 1987 WL 19818, at *2 (N.D. Ill. Nov. 10, 1987) ("[T]he claim that defendants 'disregarded the corporate formalities' is itself a legal conclusion, rather than a factual assertion[.]"). At best, these allegations create only a vague suspicion of impropriety, which does not suffice. *See, e.g.*, Doc. 30 ¶ 80 (explaining that Plaintiffs have never received information or paperwork about Skyline Limited or its financial or business activities); *id.* ¶¶ 86-87 (indicating that Plaintiffs have never received any documents about Project Two's reduced scope or the Castlehaven loan); *cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action[.]" (citation omitted)). At worst, the facts on which Plaintiffs rely have no relevance to the alter ego inquiry. *See, e.g.*, Doc. 30 ¶ 22 (explaining the intended use of investor funds); *id.* ¶ 28 (identifying Ms. Reynolds' investment in Project One); *id.* ¶ 74 (explaining the basis for Ms. Sharma's agreement to partner and invest in the Corporate Defendants). Because Plaintiffs have not presented factual allegations to elevate their argument beyond mere conclusions, they have not satisfied the unity of interest prong of

Illinois' veil-piercing test.  Accordingly, the Court cannot find that Plaintiffs have sufficiently alleged a basis for subjecting the Corporate Defendants to jurisdiction in this Court, and so the Court dismisses them from this case.[5]

## II.    Sufficiency of the Claims

The Court now turns to the Individual Defendants' arguments challenging the sufficiency of Plaintiffs' claims.  In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016).  To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555; *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case."  *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted).  Rule 9(b) does not govern only claims of fraud; it applies to all allegations and averments of fraud.  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v.*

---

[5] The Seventh Circuit has instructed that in situations where the Court finds it does not have jurisdiction over a party, the Court consider whether to transfer the case pursuant to 28 U.S.C. § 1631, even if no party requests transfer.  *North v. Ubiquity, Inc.*, --- F.4th ----, 2023 WL 4188502, at *6 (7th Cir. June 26, 2023).  But here, nothing suggests that personal jurisdiction over the Corporate Defendants exists in any district in the United States, and so the Court could not transfer Plaintiffs' claims against the Corporate Defendants to another district in order to cure the jurisdictional issue as allowed by § 1631.

*Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011); *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino*, 477 F.3d at 507.

### A.      Securities Fraud Claim (Count One)

The Individual Defendants again argue that Plaintiffs have not satisfied the pleading requirements to assert their claim for securities fraud under § 10(b) of the Securities Exchange Act of 1934, codified at 15 U.S.C. §§ 78k(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. Section 10(b) and SEC Rule 10b-5 "prohibit fraudulent or misleading statements of material fact in connection with the purchase or sale of a security." *Walleye Trading LLC v. AbbVie Inc.*, 962 F.3d 975, 977 (7th Cir. 2020). To state a claim under § 10(b) and Rule 10b-5, a plaintiff must allege that "(1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement proximately caused the plaintiff's damages." *Fryman v. Atlas Fin. Holdings, Inc.*, 462 F. Supp. 3d 888, 896 (N.D. Ill. 2020) (citations omitted).

Additionally, the Private Securities Litigation Reform Act ("PSLRA") requires "complaints alleging securities fraud [to] 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598–99 (7th Cir. 2019) (quoting 15 U.S.C. § 78u-4(b)(2)(A)). The PSLRA also requires "[a]ny complaint alleging a material misstatement or omission [to] 'specify each statement alleged to have been misleading' and the 'reason or reasons why the statement is

misleading.'" *Id.* at 599 (quoting 15 U.S.C. § 78u-4(b)(1)).  On motion by a defendant, the Court must dismiss a complaint that does not meet these requirements.  15 U.S.C. § 78u-4(b)(3)(A).

The Court previously dismissed Plaintiffs' securities fraud claim for failure to allege any specific misstatement or omission in compliance with the heightened pleading standards of Rule 9(b) and the PSLRA.  Doc 26 at 13–15.  Following the filing of the FAC, Defendants argue that Plaintiffs' securities fraud claim fails because: (1) Plaintiffs have not alleged that they purchased a security; (2) they have not complied with the PSLRA or Rule 9(b)'s requirements for alleging misstatements; (3) they have not alleged scienter; and (4) they do not allege loss causation.  The Court need only address the last argument because the lack of allegations of loss causation requires dismissal of Plaintiffs' securities fraud claim.[6]

For a securities fraud claim, a plaintiff must allege not only transaction causation but also loss causation.  *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997).  Transaction causation requires allegations that the plaintiff "would not have invested if the defendant had stated truthfully the material facts at the time of sale."  *Id.*  Loss causation requires allegations that "but for the circumstances that the fraud concealed, the investment . . . would not

---

[6] Although the Court does not address the remaining arguments, it briefly notes that Plaintiffs appear to have sufficiently alleged that they purchased a security because their allegations suggest that their roles in the venture were more akin to those of passive investors instead of individuals with meaningful control over the success of the venture.  *See McKinney v. Panico*, No. 21-CV-04602, 2022 WL 4551695, at *10 (N.D. Ill. Sept. 29, 2022) (investment contract qualifies as a security where the investor, "as a result of the investment agreement itself or the factual circumstances that surround it, is left unable to exercise meaningful control over his investment" (quoting *Robinson v. Glynn*, 349 F.3d 166, 170 (4th Cir. 2003))); *see also SEC v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476, 483 (9th Cir. 1973) ("Regardless of the fact that the purchaser here must contribute something besides his money [i.e. find prospects who will also purchase a plan], the essential managerial efforts which affect the failure or success of the enterprise are those of [the company selling the plan], not his own."); *Cogniplex, Inc. v. Ross*, No. 00 C 7463, 2001 WL 436210, at *10 (N.D. Ill. Apr. 27, 2001) (where one partner "assumed substantial, even complete, control over the Company—and, as a corollary, its profits," and the other partners remained passive investors who provided the capital, the membership interests amounted to investment contracts for purposes of securities law).  And while the Court questions whether Plaintiffs have met the high bar for pleading securities fraud under the PSLRA and Rule 9(b) given the relatively conclusory and scattershot nature of their allegations of both misstatements and scienter, the Court need not undertake the detailed analysis required to make that determination here.

have lost its value." *Id.* at 648–49 (quoting *Bastian v. Petren Res. Corp.*, 892 F.2d 680, 683 (7th Cir. 1990)). The Individual Defendants argue that Plaintiffs have not sufficiently alleged loss causation, with the FAC only stating in a conclusory fashion that the alleged misstatements "have caused Plaintiffs substantial economic loss." Doc. 30 ¶ 100.

Initially, Plaintiffs do not even respond to the Individual Defendants' argument regarding loss causation, essentially conceding the issue. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). In any event, the Court agrees with the Individual Defendants that the FAC does not include allegations of loss causation. Plaintiffs do not allege that their investment lost value because of the Individual Defendants' alleged misstatements, or even that their investment has lost value at all. Instead, they complain that the Individual Defendants have not returned their principal or provided them with their promised share of the venture's profits. While these allegations may support a breach of contract claim, they do not suggest that Plaintiffs' investments have lost value as required to show loss causation. *See Caremark*, 113 F.3d at 648–49. Even assuming that their investments have lost value, Plaintiffs have not alleged how the alleged misrepresentations and omissions caused that potential lost value. *Id.* at 648 ("To plead loss causation, the plaintiff must allege that it was the very facts about which the defendant lied which caused its injuries."). Nor can Plaintiffs meet the loss causation requirement through their allegations that the Individual Defendants' misstatements caused them to make their investments in the first place. *See id.* (allegations that an investor "would not have invested but for the fraud . . . . alleges transaction causation, but it does not allege loss causation"); *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1121 (9th Cir. 2013) ("We have consistently rejected loss causation arguments like Nuveen's—that a defendant's fraud caused plaintiffs a loss because it

'induced them to buy the shares'—because the argument 'renders the concept of loss causation meaningless by collapsing it into transaction causation.'" (citations omitted)).  Thus, Plaintiffs' securities fraud claim fails for lack of allegations of loss causation.

### B.      Fraud in the Inducement, Intentional Misrepresentation, and Negligent Misrepresentation (Counts Two–Four)

Defendants next argue that Plaintiffs have failed to sufficiently plead their claims of fraud in the inducement, intentional misrepresentation, and negligent misrepresentation.  To state a fraud claim, including one for fraudulent inducement, a plaintiff must allege that: (1) the defendant made a false statement or omission of material fact, (2) the defendant knew of or believed in its falsity, (3) the defendant intended to induce the plaintiff to act, (4) the plaintiff acted in reliance on the truth of the defendant's statement, and (5) damages resulted from the plaintiff's reliance.  *Weidner v. Karlin*, 402 Ill. App. 3d 1084, 1087 (2010); *see also Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 15 ("Fraudulent inducement is a form of common-law fraud." (citation omitted)).  To state a claim for negligent misrepresentation, a plaintiff must allege: "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information."  *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833–34 (7th Cir. 2007) (quoting *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 334–35 (2006)).

Plaintiffs' fraud claims must comply with Rule 9(b).  *Pirelli*, 631 F.3d at 446–47.  Negligent misrepresentation claims, however, typically only need to meet the more lenient pleading requirements of Rule 8.  *Tricontinental Indus.*, 475 F.3d at 835.  Despite purportedly

bringing separate intentional and negligent misrepresentation claims, the allegations for each claim remain identical and sound in fraud, stating that "Defendants *knew* that these statements were false and misleading at the time of making them," Doc. 30 ¶ 112 (emphasis added) (intentional misrepresentation); *id.* ¶ 119 (emphasis added) (negligent misrepresentation). Therefore, as the Court pointed out to Plaintiffs in ruling on their initial complaint, Doc. 26 at 16, their negligent misrepresentation claim must also meet Rule 9(b)'s heightened pleading standard, *see Media Bank, LLC v. SCOTTeVEST, Inc.*, No. 19-CV-2465, 2020 WL 6825691, at *8–9 (N.D. Ill. Nov. 20, 2020) (applying Rule 9(b) to negligent misrepresentation claim that sounded in fraud where the plaintiff "allege[d] intent to deceive, not carelessness"); *Rosenstern v. Allergan, Inc.*, 987 F. Supp. 2d 795, 806 (N.D. Ill. 2013) (citation omitted) (applying Rule 9(b) to negligent misrepresentation claim where "Plaintiff does *not* allege that Allergan acted with 'carelessness or negligence in ascertaining the truth' of its statements regarding the safety of Botox, but rather that Allergan *knowingly* made false statements").

The Court previously dismissed Plaintiffs' fraud claims for failure to comply with Rule 9(b), concluding that Plaintiffs only parroted the legal elements of the claims without identifying the content of the alleged misrepresentations and the circumstances surrounding their making. Doc. 26 at 16–17. While the FAC provides some additional detail, the Court finds that it still does not provide the Individual Defendants or the Court with sufficient information as to the conduct underlying the fraud-based claims or the connection of any alleged misstatement to Plaintiffs' investments in the venture.[7]  *See MPC Containment Sys., Ltd. v. Moreland*, No. 05 C

---

[7] Plaintiffs argue in their response that the Court should relax Rule 9(b)'s pleading requirements because Defendants allegedly control the information underlying their fraud claim. *See Pirelli*, 631 F.3d at 442–43 (a plaintiff may plead fraud on information and belief where "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides 'the grounds for his suspicions"). But while Defendants may have refused to provide information about the flow of money to and from the Corporate Defendants, the Court fails to understand how the lack of this information precludes Plaintiffs from

6973, 2006 WL 2331148, at *3 (N.D. Ill. Aug. 10, 2006) ("MPC's lack of specificity regarding

when and how the alleged false advertising and misrepresentations took place does not provide

defendants with notice of the alleged wrongs, nor does it enable them to formulate an adequate

response.").

Initially, the dates when the alleged misrepresentations or omissions occurred, as well as

the timing of Plaintiffs' investments, remain unclear. *See Nalco Co. v. Chen*, No. 12 C 9931,

2013 WL 4501425, at *4 (N.D. Ill. Aug. 22, 2013) ("Chen also fails to provide anything more

than a year in which the alleged fraudulent statements were made, which is insufficient when

pleading the timing of a fraudulent statement."). Without an established timeline, the question of

whether any statement caused Plaintiffs' alleged damages (for these claims, apparently the

decision to invest in the ventures) remains entirely speculative.[8] *See Mobimeds, Inc. v. E-Medrx*

*Solutions, Inc.*, No. 19-cv-3224, 2020 WL 13615926, at *10 (C.D. Ill. Aug. 17, 2020)

("Defendants' alleged misrepresentations could have no causal connection to money Defendants

are alleged to have taken *before* Defendants made the alleged fraudulent statements."); *Barnholtz*

---

alleging their fraudulent inducement claims with specificity. Plaintiffs allege that the Individual
Defendants made misrepresentations to them that induced them to invest in the venture, meaning that
"Plaintiffs should know what [the Individual Defendants] said, to whom, and when." *In re Boeing 737*
*MAX Pilots Litig.*, --- F. Supp. 3d ----, 2022 WL 16553025, at *27 (N.D. Ill. Oct. 31, 2022).

[8] For example, the FAC only alleges that Ms. Reynolds made one investment in the venture, with
Plaintiffs submitting in their response that she sent her money to Ms. Abeton's lawyer in September 2017,
with it only actually invested in Skyline DAC in January 2018. *See* Doc. 43 at 5 n.6. This would suggest
that Ms. Reynolds could only pursue a claim for statements or omissions made before these dates, but the
FAC does not allow the Court to determine on which statements she claims to have relied in making that
investment. Similarly, it appears that Ms. Sharma only invested in Project Two, though at an unspecified
date. The FAC alleges that Mr. and Mrs. Abeton made statements to Plaintiffs and U.S. investors during
a trip to Chicago to "raise funds from Plaintiffs' personal and professional acquaintances for investment
in Project Two," Doc. 30 ¶ 75, but it does not specify when this trip occurred or whether Ms. Sharma had
already made her investment before hearing the alleged misstatements. And while the FAC alleges that
Ms. Abeton and Ms. Sharma met in summer 2018, when Ms. Abeton allegedly misrepresented that she
would amend the Skyline Limited corporate documents to reflect Ms. Sharma's ownership, *id.* ¶ 79, the
Court cannot determine whether that representation occurred before or after Ms. Sharma made her
investment.

*v. Mobil Oil Corp.*, No. 89 C 5793, 1994 WL 468088, at *8 (N.D. Ill. Aug. 24, 1994) ("One cannot assert reliance on a statement made after the action allegedly made in reliance occurred. Mobil therefore also could not have had the intent to induce reliance.").  Similarly, with respect to statements concerning Project Two, the FAC generally alleges that Defendants made the misstatements during a trip to Chicago, although it appears that only Ms. Abeton traveled to Chicago, leaving it unclear whether Mr. Byrne is implicated in the fraud claims related to Project Two.  *See Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) ("Because fair notice is the 'most basic consideration underlying Rule 9(b),' in a case involving multiple defendants, 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" (quoting *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 777–78 (7th Cir. 1994))); *Edalatdju v. Guaranteed Rate, Inc.*, 748 F. Supp. 2d 860, 864 (N.D. Ill. Aug. 27, 2010) (pleading did not meet Rule 9(b) where, among other things, it did not specifically allege the maker of the statements).  Moreover, without additional context as to when the statements and other events occurred, the Court cannot determine whether the alleged misstatements are actionable, as many appear to be promises about the future, instead of statements of present or preexisting facts.  *See Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 413 (7th Cir. 2009) ("[P]romissory fraud, i.e., a false statement of intent regarding future conduct rather than present or past facts, 'is generally not actionable under Illinois law unless the plaintiff also proves that the act was a part of a scheme to defraud.'" (citation omitted)); *Ault v. C.C. Servs., Inc.*, 232 Ill. App. 3d 269, 271 (1992) ("[A]lleged misrepresentations must be statements of present or preexisting facts, and not statements of future intent or conduct.").  *But see Bommelman v. Transfer Print Foils, Inc.*, No. 97 C 2082, 2000 WL 816792, at *5 (N.D. Ill. June 22, 2000) ("When a party states a matter which might otherwise be considered an opinion, but fails to state it is an expression of an

opinion, the other party may reasonably treat it as a fact and rely upon it as such.").  And for many of the alleged misstatements, the FAC does not allow for the inference that the Individual Defendants did not intend to fulfill those promises at the time they were made.  *See BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 137 (7th Cir. 2011) ("[T]he fact that a party breaks a contract doesn't show that its promise to perform it had been fraudulent when made—that is, that the party had never intended to perform it."); *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007) ("A claim for fraud, promissory or otherwise, requires a showing that, *at the time the allegedly fraudulent statement was made*, it was an intentional misrepresentation.  For promissory fraud claims, when the promise was made, the promisor had no intent to fulfill it; if the promisor simply later changed his mind, an action for fraud will not lie.").  Thus, the Court finds that Plaintiffs have again failed to sufficiently plead their fraud-based claims.

### C.    Conversion (Count Five)

Finally, the Individual Defendants argue that Plaintiffs have not adequately pleaded conversion.  Conversion "is the unauthorized assumption of the right to possession or ownership of personal property belonging to another."  *Cordes & Co. v. Mitchell Cos.*, 605 F. Supp. 2d 1015, 1024 (N.D. Ill. 2009).  To state a claim for conversion under Illinois law, Plaintiffs must allege that (1) they had a right to the property at issue; (2) they had an "absolute and unconditional" right to the immediate possession of the property; (3) they made a demand for possession; and (4) the Individual Defendants wrongfully and without authorization assumed control, dominion, or ownership over the property.  *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 738 (7th Cir. 2016).  "Money may be the subject of conversion, but it must be capable of being described as a specific chattel[.]"  *In re Thebus*, 108 Ill. 2d 255, 260 (1985).

20

The Court previously dismissed Plaintiffs' conversion claim, finding it was based solely on an obligation to pay money. Doc. 26 at 18. Plaintiffs have added nothing in the FAC to overcome that deficiency. The Court acknowledges that, as opposed to their initial complaint in which they only alleged an entitlement to a percentage of profits, the FAC includes the specific amount that they believe Defendants wrongfully hold, €3,873,189. Doc. 30 ¶ 129. But despite including a specific number, they continue to merely allege an obligation to pay money. *See* Doc. 43 at 12 ("[T]he Individual Defendants wrongfully and without authorization assumed control and dominion over the principal and profits from the projects that rightfully belonged to Plaintiffs. . . . Plaintiffs have submitted sufficient facts to demonstrate a claim for conversion of Plaintiffs' profit entitlement[.]"). As the Court previously held, the obligation to repay Plaintiffs' investments and additional profits from the venture cannot serve as the basis for a conversion claim. *Thebus*, 108 Ill. 2d at 260 ("[A]n action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money."); *see also AmeriFactors Fin. Grp., LLC v. Univ. of Chicago*, No. 21 C 6803, 2022 WL 3081897, at *6 (N.D. Ill. Aug. 3, 2022) (dismissing conversion claim where the plaintiff only alleged that the defendant "has not paid a bill on time"); *Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011, 1017 (N.D. Ill. 2009) (dismissing conversion claim where the plaintiff "merely claims a right to an indeterminate sum of royalties"). Thus, the Court again dismisses Plaintiffs' conversion claim.

## III. Dismissal with Prejudice

Given the fact that the Court provided Plaintiffs with the opportunity to cure their pleading deficiencies and they failed to do so, the Court dismisses Plaintiffs' claims against the Individual Defendants with prejudice. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 734–35 (7th Cir. 2014) (affirming dismissal with prejudice of first amended complaint after

initial complaint was dismissed without prejudice); *Pirelli Armstrong Tire Corp., Retiree Med. Benefits Tr. v. Walgreen Co.*, No. 09 C 2046, 2010 WL 624709, at *1 (N.D. Ill. Feb. 18, 2010) (dismissing amended complaint with prejudice after previous dismissal of ICFA and unjust enrichment claims without prejudice), *aff'd*, 631 F.3d 436.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss [41]. The Court dismisses the Corporate Defendants from this case for lack of personal jurisdiction. The Court dismisses Plaintiffs' claims against the Individual Defendants with prejudice and terminates this case.

Dated: August 1, 2023

SARA L. ELLIS
United States District Judge